No. 25-2033

# United States Court of Appeals
# For the First Circuit

---

UNITED STATES, ex rel. JAMES R. BERKLEY,

Plaintiff-Appellant,

v.

OCEAN STATE, LLC, NEW HARBOR CAPITAL FUND LP, NEW HARBOR CAPITAL FUND II LP, NEW HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT TEST PREPARATION, LLC, FYZICAL ACQUISITION HOLDINGS, LLC,

Defendants-Appellees,

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND
CASE NO. 1:20-cv-00538-JJM-PAS
JUDGE JOHN J. MCCONNELL, JR.

---

## REPLY BRIEF FOR PLAINTIFF-APPELLANT JAMES R. BERKLEY

---


Eric E. Renner (CA1# 1136562)
DUFFY & SWEENEY,
DIVISION OF STEVENS & LEE
321 South Main Street, Suite 400
Providence, RI 02903
Phone: 401-455-0700
Fax: 401-455-0701
eric.renner@stevenslee.com

*Attorneys for Plaintiff-Appellant, James R. Berkley*

## TABLE OF CONTENTS

TABLE OF CONTENTS ... i

TABLE OF AUTHORITIES ... iii

PRELIMINARY STATEMENT ... 1

ARGUMENT ... 7

I. Appellees Defend the Judgment Under the Wrong Framework ... 7

II. Appellees Conflate the Public Disclosure Bar with Rule 9(b) and Rule 56 ... 11

III. The District Court Erred as to the PPP Recipients ... 13

A. The Public Materials Did Not Disclose the Contradictory Facts Necessary to Plausibly Infer False Necessity Certifications ... 13

B. The Public Materials Did Not Disclose the Contradictory Facts Necessary to Plausibly Infer False Eligibility Certifications ... 18

C. Appellees' Step Three Substantial Similarity Arguments Do Not Save The Judgment ... 19

D. There is No "Claim Smuggling" and No Original Source Issue Because the Bar Was Never Triggered ... 20

IV. The Judgment Should Be Reversed Independently as to New Harbor ... 22

A. The District Court Needed to Analyze Berkley's Discrete Claim Against New Harbor ... 23

B. The Public Materials Did Not Disclose the Essential Transactional Facts of Berkley's Claim Against New Harbor ... 25

C. The Public Materials Were Not Substantially the Same as Berkley's Claim Against New Harbor ... 28

CONCLUSION ........................................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonilla v. Trebol Motors Corp.*,
150 F.3d 77 (1st Cir. 1998) .......... 13

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
559 U.S. 280 (2010) .......... 8

*Guilfoile v. Shields*,
913 F.3d 178 (1st Cir. 2019) .......... 23

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) .......... 4, 8

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 4, 8

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) .......... 21

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
89 F.4th 1154 (9th Cir. 2024) .......... 9, 12, 17, 20

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
563 U.S. 401 (2011) .......... 8

*U.S. ex rel. Est. of Cunningham v. Millennium Lab'ys of California, Inc.*,
713 F.3d 662 (1st Cir. 2013) .......... 19, 23, 25, 28

*U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*,
647 F.3d 377 (1st Cir. 2011) .......... 23

*U.S. ex rel. Ondis v. City of Woonsocket*,
587 F.3d 49 (1st Cir. 2009) .......... 8, 14, 24

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
14 F.3d 645 (D.C. Cir. 1994) .......... 3, 8, 9, 10, 11, 12, 13, 15, 21

*United States ex rel. Findley v. FPC-Boron Emps.' Club*,
105 F.3d 675 (D.C. Cir. 1997) ....................10, 11

*United States ex rel. O'Connor v. U.S. Cellular Corp.*,
153 F.4th 1272 (D.C. Cir. 2025) ....................9, 16

*United States v. Rios-Rivera*,
913 F.3d 38 (1st Cir. 2019) ....................4

*United States ex rel. Sam Jones Co., LLC v. Biotronik, Inc.*,
152 F.4th 946 (9th Cir. 2025) ....................20, 25

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
827 F.3d 201 (1st Cir. 2016) ....................2, 10, 11, 14, 22, 24

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ....................22, 24

31 U.S.C. § 3729(a)(1)(B) ....................22, 24

31 U.S.C. § 3729(a)(1)(G) ....................22, 24

31 U.S.C. § 3730(e)(4)(A) .................... 2, 7, 8, 15, 19, 23, 25, 26

**Rules**

Fed. R. Civ. P. 9(b) .................... 2, 3, 12, 13, 15, 19, 26

Fed. R. Civ. P. 12(b)(6) ....................2, 3, 12, 15, 19

Rule 56 .................... 2, 3, 12, 13, 15, 19, 26

**Other Authorities**

*Unfounded*, Merriam Webster, https://www.merriam-webster.com/dictionary/unfounded (last visited May 6, 2026) ....................15

## PRELIMINARY STATEMENT

Appellees' brief confirms the central error below. The district court identified no qualifying public disclosure that revealed the essential transactional facts of either aspect of the fraudulent scheme Berkley alleged. Instead, it treated facially lawful public facts—PPP loans, ownership relationships, assets under management ("AUM"), and employee counts—as if those facts themselves disclosed fraud. It then reinforced that error by focusing on Berkley's investigation, motives, supposed lack of insider status, and reliance on public sources. That is not the statutory inquiry.

Appellees try to make this appeal about Berkley. It is not. This case is about what Appellees did with the public's money during the opening months of the COVID-19 crisis. When PPP funds were limited and small businesses nationwide were desperate for relief, New Harbor and its portfolio companies sought and obtained millions of dollars in taxpayer-backed loans. Those loans were supposed to be reserved for those who truly needed them: applicants that satisfied the program's eligibility rules and could truthfully and in good faith certify necessity. Berkley's claim is that the PPP Recipients did neither. Rather than address that conduct directly, Appellees try to distract the Court by attacking Berkley's motives and methods. Those attacks do not answer the statutory question presented here:

whether qualifying public disclosures had already revealed the fraudulent PPP scheme Appellees carried out.

Section 3730(e)(4)(A) of the FCA asks whether "substantially the same allegations or transactions" alleged in the "action or claim" were publicly disclosed through a qualifying channel. It does not ask whether the relator reviewed public sources, whether Appellees have a philosophical opposition to *qui tam* litigation, whether Berkley is a conventional insider, or whether his allegations ultimately survive Rule 9(b), Rule 12(b)(6), or Rule 56. Those are different questions. The public disclosure bar question is different and antecedent: what did the public disclosures themselves reveal before Berkley sued?

Appellees' own argument refutes their public disclosure bar theory. They say Berkley searched the Internet, made unfounded assumptions, and called lawful conduct fraudulent. Appellees' Brief ("Appellees' Br.") 2–3, 22–26, 41–42, 60. But what they call assumptions are the allegations Berkley pleaded. Their sufficiency and evidentiary support are Rule 9(b), Rule 12(b)(6), or Rule 56 issues. They do not establish public disclosure under the FCA. Nor can Appellees trigger the bar by arguing that "anyone could have added unfounded assumptions to infer fraud." Appellees' Br. 60. If the inference depends on assumptions Appellees themselves call unfounded, then the public materials did not "lead to a plausible inference of fraud." *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208

(1st Cir. 2016). Appellees say Berkley's complaint "fits" the public disclosure bar test "hand in glove." Appellees' Br. 35. But that supposed fit depends entirely on filling the glove with assumptions Appellees say were unfounded and thus implausible.

*Springfield Terminal* supplies the controlling distinction. Public disclosure of some information is not enough. The bar applies only when the public domain reveals either the allegation of fraud itself or the essential X + Y transaction from which fraud (the Z) can reasonably be inferred. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653–55 (D.C. Cir. 1994). Where only one element of the fraudulent transaction is public, a relator may proceed by supplying either the missing element or the allegation of fraud itself. *Id*. at 655 & n.10. And if a relator fails to plead or prove fraud with adequate particularity or evidentiary support, the answer lies in Rule 9(b), Rule 12(b)(6), or Rule 56, not in rewriting the public disclosure bar by expanding it beyond its text. *Id.*

Much of Appellees' brief substitutes rhetoric for statutory analysis. They portray Berkley as trying to "get even," accuse him of waging a "pressure campaign," emphasize that *qui tam* relators may "collect a bounty," invoke "rampant opportunism," and rage against relators "chasing a windfall." Appellees' Br. 1–3, 8, 11, 17, 20–22, 59–60. At the same time, they ask the Court to view sophisticated private equity sponsors and their portfolio companies as sympathetic pandemic



5/6/2026 SL1 4109010v1 121315.00003

victims, while minimizing New Harbor's documented oversight, direction, and control. *Id*. 15–20. But hard-nosed financial professionals whose business model depends on leverage, control, and aggressive cost discipline do not become objects of special solicitude because they wrap their public disclosure bar argument in pandemic equities. That is merits-based trial advocacy, not public disclosure bar analysis. It asks the Court to decide this appeal based on emotion and policy preference rather than the statutory test Congress enacted.

The Court should reject that invitation. If Appellees are trying to invoke constitutional unease with *qui tam* suits to justify a broader public disclosure bar, those arguments were never raised below and cannot, in Appellees' own parlance, be "smuggled" into this appeal through rhetoric. The same preservation rules apply here as in any other case: arguments not timely raised below are forfeited. *See United States v. Rios-Rivera*, 913 F.3d 38, 42 (1st Cir. 2019). There is no exception for constitutional rhetoric.

More fundamentally, this Court's role is to apply the FCA's public disclosure bar as written, not enlarge it based on policy fears about relators or free-floating concerns about *qui tam* litigation. The Supreme Court has made clear that courts interpret statutes; they do not rewrite them to reflect policy concerns not found in the text Congress enacted. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89–90 (2017).

Public disclosures do not trigger the FCA bar merely because they make fraud imaginable. They must disclose enough concrete, contradictory facts to make fraud plausible. The cited materials did not do that for either necessity or eligibility. They supplied only neutral background facts equally consistent with lawful PPP participation. As to necessity, they showed that the PPP Recipients received PPP loans, that New Harbor had ownership interests, and that New Harbor had sizeable aggregate AUM across separate funds. But they did not disclose the contradictory fact necessary to plausibly infer a false necessity certification: that the PPP Recipients had actually accessible New Harbor liquidity and nevertheless certified necessity. As to eligibility, the public materials showed ownership structure and employee counts. But they did not disclose the contradictory fact necessary to plausibly infer a false eligibility certification: that no affiliation waiver applied. Public facts consistent with lawful PPP participation are not public disclosures of fraud.

The error is most acute as to New Harbor. Appellees devote scant attention to Berkley's discrete claim that New Harbor, though not itself the borrower, knowingly *caused* the PPP Recipients to submit false claims. Their answer is procedural: because the district court analyzed the PPP Recipients, any failure to separately analyze New Harbor was harmless. That is wrong. Berkley's point is not

that the district court needed more words. It is that the court never performed the claim-specific, defendant-specific public disclosure bar analysis the statute requires.

At step one of the analysis—as Appellees themselves frame it—the question is whether the essential transactional facts exposing the claim as fraudulent entered the public domain. Appellees' Br. 41–44. For the New Harbor claim, the essential transactional fact is causation: New Harbor's alleged oversight, direction, control, and causal role in bringing about the PPP applications and false certifications. Indeed, there can be no transactional fact more essential to Berkley's claim against New Harbor than its causal role. Unless qualifying public disclosures revealed facts plausibly disclosing that causal role, the public disclosure bar cannot apply to Berkley's New Harbor claim.

No such disclosure exists. The public materials Appellees cite concern the PPP loans, New Harbor's ownership interests, company relationships, AUM, employee counts, and Roselli's public roles. None disclosed that New Harbor had any involvement in the PPP loan process, much less that it oversaw, directed, controlled, and caused the challenged submissions. Step three fails for the same reason. Public references to the PPP Recipients, ownership structures, AUM, and headcounts are not substantially the same as Berkley's distinct allegation that New Harbor, as a non-submitting entity, caused false claims to be presented. Treating the PPP Recipients' publicly visible conduct as enough to bar Berkley's discrete New

Harbor claim would collapse distinct FCA theories and create derivative public disclosure bar immunity for private equity owners and parent entities whenever the public knew only of the submitting entity's conduct. Because the public domain did not disclose—and was not substantially the same as—New Harbor's own alleged causal role, the district court's order cannot be affirmed as to New Harbor.

Appellees therefore ask this Court to affirm on a theory the statute does not permit: that public disclosure of lawful background facts, combined with attacks on Berkley's motives and proof, is enough to bar claims whose essential fraudulent transactions were never publicly disclosed. Section 3730(e)(4)(A) does not allow that shortcut. Because the cited public sources did not reveal the alleged fraud as to the PPP Recipients, and did not reveal New Harbor's own causal role, the district court's order should be reversed.

## ARGUMENT

### I. Appellees Defend the Judgment Under the Wrong Framework

The post-2010 FCA only bars actions or claims in which "substantially the same allegations or transactions" as alleged in the action or claim "were publicly disclosed" through one of the enumerated channels. 31 U.S.C. § 3730(e)(4)(A). The statutory inquiry is objective and content based. It asks what the public disclosures themselves revealed. It does not ask whether the relator reviewed public materials, relied on public materials, or lacked traditional insider status. Even before 2010,

this Court rejected any equation of "based upon" with "derived from." *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 57–58 (1st Cir. 2009).

Appellees resist that straightforward inquiry by invoking anti-parasitism policy concerns and generalized hostility to *qui tam* suits. Appellees' Br. 1, 8, 11–12, 59–60. But policy concerns cannot enlarge the statutory text. *See Loper Bright Enters*, 603 U.S. at 374; *Henson*, 582 U.S. at 89–90. That is especially true here because the Supreme Court has recognized both that Congress sought to balance private enforcement against parasitic suits and that "Congress was never completely clear" about the precise kind of parasitism it intended to prevent. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294–96 & n.15 (2010). The Court should therefore decide this appeal by applying § 3730(e)(4)(A)'s text to the content of the cited public disclosures, not by Appellees' policy rhetoric.

Nor does *Schindler* help Appellees. Appellees' Br. 59. The statute still requires public disclosure of substantially the same "allegations or transactions," even if the public disclosure bar has a "generally broad scope." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011). It does not bar a claim merely because public materials disclosed background facts consistent with lawful conduct.

*Springfield Terminal* makes the distinction explicit: "Courts sometimes speak loosely of barring a *qui tam* suit because it is based on publicly disclosed information. But the Act bars suits based on publicly disclosed allegations or

transactions, not information." 14 F.3d at 653 (internal quotations and citations omitted). In *Springfield Terminal's* familiar formulation, if X + Y = Z, then X and Y are the essential elements of the fraudulent transaction and Z is the allegation of fraud. *Id*. at 654. The public disclosure bar is triggered only if the public domain contains either the allegation of fraud itself or the critical X + Y combination from which fraud (the Z) may reasonably be inferred. *Id*. Public facts that are merely suggestive, incomplete, or consistent with lawful conduct are not enough. *Id*. at 657.

Recent sister circuit authority confirms the point. In *Silbersher*, the court held that scattered public disclosures "may each contain a piece of the puzzle," but do not trigger the bar where, "when pieced together, they fail to present the full picture of fraud." *Silbersher v. Valeant Pharm. Int'l, Inc.*, 89 F.4th 1154, 1168 (9th Cir. 2024). In *O'Connor*, the District of Columbia Circuit stated that public disclosures showing a large company's investment relationship with a preferred small business bidder did not suggest fraud where the regulatory scheme permitted that relationship, and the disclosures were "fully consistent with the scheme operating lawfully and as intended" and "raise[ed] no strong inference of fraud" absent public facts showing actual control, concealment, or an undisclosed agreement to take over the bidder's licenses. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, 153 F.4th 1272, 1279–80 (D.C. Cir. 2025).

So too here. The PPP rules did not disqualify private equity portfolio companies from receiving PPP loans. New Harbor's AUM, ownership interests, and aggregate employee counts across affiliates did not, without more, render the PPP Recipients ineligible or make their necessity certifications false. Those public facts were fully consistent with lawful PPP participation. They did not disclose the missing transactional facts necessary to plausibly infer fraud: accessible New Harbor liquidity, affiliation waiver inapplicability, or New Harbor's causal role in the PPP submissions. Appellees' theory therefore depends on stacking inference upon inference from lawful public ingredients. *Springfield Terminal* forbids that move.

Appellees' counter rests on *Findley* and, by extension, *Winkelman*: that Berkley merely used expertise to convert public facts into an allegation of fraud. Appellees' Br. 56–57. But *Findley* bars only a relator who "merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim." *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997); *see also Winkelman*, 827 F.3d at 209 (same). *Springfield Terminal*, which *Findley* invoked, states the same limiting principle: expertise alone does not save a relator when "all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts." 14 F.3d at 655.

That limiting principle defeats Appellees' argument. In *Winkelman*, the public domain already contained an Attorney General press release and ensuing media coverage publicly accusing CVS of the same overbilling theory later advanced in the qui tam complaint. 827 F.3d at 204–06, 210–12. *Findley* likewise involved public materials that already exposed the allegedly wrongful generic practice, with the relator adding little more than legal labels and the identity of particular employee clubs. 105 F.3d at 686–88.

This case is different. There was no comparable public accusation of PPP fraud by these Defendants, and the public domain lacked the essential transactional facts necessary to plausibly infer the alleged fraud. Accepting Berkley's position would not make the public disclosure bar toothless. It would leave untouched cases in which the public domain already contains the material elements of fraud and the relator merely adds expertise, detail, or a legal label. This is not such a case.

## II. Appellees Conflate the Public Disclosure Bar with Rule 9(b) and Rule 56

Appellees repeatedly fault Berkley for supposed lack of detail in the Second Amended Complaint and suggest that he came forward only with bare accusations unsupported by proof. *Springfield Terminal* forecloses that move as well. The court there held that when only one element of the fraudulent transaction is public, "the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (e.g., Y) or allegations of fraud itself (e.g.,

Z)." 14 F.3d at 655. The court then addressed the precise objection Appellees raise here: if the relator comes forward only with a conclusory allegation unsupported by facts, the district court has "ample traditional tools" to dismiss under Rule 9(b), Rule 12(b)(6), or Rule 56. *Id*. at 655 n.10. The *Silbersher* court recently made the same point. 89 F.4th at 1169 ("In concluding that prior public disclosures did not reveal 'substantially the same' allegations or transactions as described in Silbersher's *qui tam* complaint, we make no statement about the sufficiency of the pleadings [for Rule 9(b) purposes].").

That is dispositive here. Berkley's point has never been that accusation alone defeats the public disclosure bar. His point is that the public domain disclosed, at most, scattered and innocuous background facts, while the operative Second Amended Complaint supplied the missing fraud allegation and the missing contradictory facts. Discovery—and the summary judgment record—then supplied evidentiary support for the allegations. *Springfield Terminal* expressly contemplates that sequence.

Appellees' response therefore attacks the wrong thing. If they believed Berkley's allegations were insufficiently particular, they had Rule 9(b). If they believed the summary judgment record was insufficient to prove falsity, scienter, or



5/6/2026 SL1 4109010v1 121315.00003

causation, they had Rule 56 on the merits. But the district court did not grant judgment on those grounds. It granted judgment solely on the public disclosure bar.[1]

This distinction matters because Appellees repeatedly substitute merits rhetoric for public disclosure bar analysis. They say Berkley "assumed" the PPP Recipients could access New Harbor liquidity. Appellees' Br. at 2, 22–26, 41–42, 60. They say he "assumed" no affiliation waiver applied. *Id.* They say he failed to plead or prove facts showing New Harbor caused the submissions. *Id.* at 65. Those are not public disclosure bar arguments. They are arguments about pleading sufficiency and proof. *Springfield Terminal* explains that those questions are handled by ordinary procedural devices, not by stretching the public disclosure bar to swallow them. 14 F.3d at 655 n. 10.

## III. The District Court Erred as to the PPP Recipients

### A. The Public Materials Did Not Disclose the Contradictory Facts Necessary to Plausibly Infer False Necessity Certifications

Appellees' step one argument as to the False Necessity Certification aspect still depends on an inferential leap the public domain never supplied. The cited public sources showed only that the PPP Recipients obtained PPP loans, that New

---

[1] This is not a Rule 9(b) notice case. Appellees had full notice of Berkley's claims and supporting evidence through the Second Amended Complaint, discovery, and the summary judgment record. Requiring a further conforming amendment would elevate form over substance and impose the "silly" exercise of restating allegations already known to the opposing party. *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 81 (1st Cir. 1998).

Harbor had ownership stakes in them, and that New Harbor had sizeable aggregate AUM. But as Berkley explained in his Opening Brief, public ownership and public AUM figures do not disclose the critical contradictory fact necessary to plausibly infer a false necessity certification: that the PPP Recipients had the ability to access New Harbor liquidity sufficient to support their operations yet chose not to use it. Opening Brief ("Br.") 29–30. AUM is not the same thing as accessible portfolio company liquidity. It says nothing about whether funds were accessible or deployable, whether New Harbor would authorize support for a particular company, or whether the borrower had alternative liquidity available at the time of certification.

Appellees' "unfounded assumptions" argument defeats step one. They say Berkley merely assumed the PPP Recipients could access New Harbor liquidity and that "[a]nyone could have used the Internet to find what he found" and "added unfounded assumptions to infer fraud." Appellees' Br. 2–3, 22–26, 42, 60. But public information plus speculation is not enough. The bar applies only when the public materials themselves, alone or in combination, "lead to a plausible inference of fraud." *Winkelman*, 827 F.3d at 208 (*quoting Ondis*, 587 F.3d at 54). If accessible

liquidity had to be assumed or supplied by Berkley, it was not publicly disclosed. And if the assumptions were unfounded, the inference was not plausible.[2]

As Berkley explained in his Opening Brief, possibility does not equal plausibility where a lawful explanation is at least equally consistent with the public facts. Br. 35–36. Appellees conflate suspicion with plausibility and replace disclosed facts with speculation. The governing standard requires more than a sheer possibility that a defendant acted unlawfully; where the facts are merely consistent with liability, they stop short of plausibility. *Id.* For the public disclosure bar to apply, the cited public materials had to disclose enough concrete facts to support a plausible inference of fraud, not merely facts from which fraud might be hypothesized after adding extra assumptions. They did not. Appellees' quarrel with the sufficiency of Berkley's allegations belongs under Rule 9(b), Rule 12(b)(6), or Rule 56, not under § 3730(e)(4)(A). *See Springfield Terminal*, 14 F.3d at 655 n.10.

The Roselli conversation confirms the point. Appellees argue that Berkley's testimony creates a credibility problem because the full formulation—"Yeah, we could, but that's not how it works"—was not quoted in the Second Amended Complaint, interrogatory responses, or stated in every deposition answer. Appellees' Br. 47–48. But again, that is a merits argument, not a public disclosure

[2] Merriam-Webster defines "unfounded" as "lacking a sound basis : groundless, unwarranted" *See* https://www.merriam-webster.com/dictionary/unfounded

bar argument. For now, the operative point is undisputed: the conversation was private, occurred in March 2020 before the PPP applications, and appeared in no qualifying public disclosure. That timing supports Berkley. It is consistent with his receipt of pre-application information about New Harbor's relationship to the PPP Recipients' finances, not with a relator stitching together public facts after the fact.

Nor can Appellees dismiss the conversation as merely about rent. Berkley testified that he asked why Ocean State was not obtaining New Harbor funding for operating expenses, including rent, and Roselli responded from his dual New Harbor/Ocean State position. SUPPAPP022; SUPPAPP166 at 61:11–12. Whether phrased as "that's not how it works" or "Yeah, we could, but that's not how it works," the exchange supplied non-public information about New Harbor's relationship to Ocean State's and the other PPP Recipients' operating finances and their ability to access New Harbor liquidity during the PPP period. Public ownership and AUM were, at most, background X; the Roselli exchange supplied material non-public information supporting Berkley's false necessity allegation.

And even apart from the Roselli conversation, Appellees' theory fails on its own terms. Public information showing that a private equity sponsor owned the borrower and had sizeable AUM remained fully consistent with lawful PPP participation and raised "no strong inference" of fraud. *O'Connor*, 153 F.4th at 1280. That is especially so because the good faith necessity certification was borrower-

specific and contemporaneous. It turned on actual financial circumstances and actual accessible liquidity, not on generalized abstractions about private equity capital structures. Public references to ownership and AUM did not disclose the contradictory true facts necessary to plausibly infer that the certifications were false when made.

Appellees are also wrong to suggest that scienter is categorically irrelevant to the public disclosure bar analysis. Berkley is not arguing that a public disclosure must prove scienter as a separate legal element of an FCA claim. The point is that, where the alleged fraud depends on a knowingly false, good faith certification, the public domain must disclose enough transactional facts to permit a plausible inference of fraud. *Silbersher* is again instructive. There, the court ruled that the public disclosures did not trigger the bar because they omitted a "critical fact necessary for scienter" and therefore did not reveal facts from which fraud could reasonably be inferred. 89 F.4th at 1168. So too here. The cited public materials did not disclose the contemporaneous facts about accessible New Harbor liquidity or the PPP Recipients' decision to take PPP loans instead of accessing that liquidity. Without those facts, the public domain did not disclose a transaction from which falsity or lack of good faith could plausibly be inferred.



5/6/2026 SL1 4109010v1 121315.00003

### B. The Public Materials Did Not Disclose the Contradictory Facts Necessary to Plausibly Infer False Eligibility Certifications

Appellees' step one arguments as to the False Eligibility Certification aspect fail for the same reasons. The public sources showed, at most, ownership structure, employee counts, and the existence of PPP loans. But those public facts did not disclose the critical contradictory fact necessary to plausibly infer a false eligibility certification: that the PPP Recipients did not qualify for any affiliation waiver and nevertheless certified compliance with the PPP's size and affiliation rules.

Public ownership and headcount data do not by themselves disclose ineligibility. Without facts negating an affiliation waiver, those public materials reveal only part of the equation. Appellees' own brief again confirms why the step one public disclosure bar analysis fails for this aspect. They expressly argue that Berkley did not know whether any waiver applied and merely assumed that none did. Appellees' Br. 23, 30, 42. But again, if Berkley had to assume that no waiver applied, then the public domain did not disclose that fact. Public sources that show ownership and employee counts, but not waiver inapplicability, do not reveal the contradiction necessary to plausibly infer a false eligibility certification. They provide only one side of the equation. If waiver inapplicability could be reached only by adding what Appellees call Berkley's "unfounded assumptions," then the public disclosures did not lead to a plausible inference of false eligibility. *See* supra, Part III.A.

That omission is dispositive. Waiver inapplicability is the essential fact that converts public ownership and aggregate headcount information from neutral background into an allegedly false certification. Yet neither the district court nor Appellees identify any public source disclosing that no waiver applied. At most, Appellees argue that Berkley lacked sufficient support for that allegation. That is a Rule 9(b), Rule 12(b)(6), or Rule 56 argument, not a public disclosure bar answer.

### C. Appellees' Step Three Substantial Similarity Arguments Do Not Save The Judgment

Appellees also argue that painstaking comparison is unnecessary because Berkley points to no evidence on which his suit depends that was not publicly disclosed. Appellees' Br. 52. That argument again confuses overlap in background facts with disclosure of the same fraudulent transaction.

Step three asks whether Berkley's action alleges "substantially the same allegations or transactions" as what was publicly disclosed. 31 U.S.C. § 3730(e)(4)(A). It does not ask whether some of the same raw facts appear in both places. This Court's *Cunningham* decision is instructive. There, the Court held that one aspect of an alleged fraudulent testing scheme was barred, but another was not, because the prior disclosure did not reveal the latter aspect of the fraud. *U.S. ex rel. Est. of Cunningham v. Millennium Lab'ys of California, Inc.*, 713 F.3d 662, 669–71, 675–76 (1st Cir. 2013).

The same principle applies here. Public disclosures of PPP loans, ownership, AUM, and employee counts did not reveal the specific fraudulent transactions Berkley alleged: false necessity certifications premised on accessible but withheld liquidity and false eligibility certifications premised on affiliation waiver inapplicability.

The recent sister circuit authority reinforces the point. *Silbersher* held that scattered public disclosures may reveal "some of these true and misrepresented facts," but still fail to disclose substantially the same fraud when they do not reveal "the full picture of fraud." 89 F.4th at 1168. The court in *Sam Jones* similarly held that a complaint is not substantially the same as prior public reporting where, "when viewed with the appropriate level of generality," the complaint adds genuinely new and material information about the fraudulent arrangement at issue. *United States ex rel. Sam Jones Co. v. Biotronik, Inc.*, 152 F.4th 946, 959 (9th Cir. 2025). That reasoning fits this case. Berkley's action did not merely restate public knowledge that private equity-backed companies received PPP loans. It alleged the missing contradictory facts that transformed those facially lawful public facts into a fraud claim.

### D. There is No "Claim Smuggling" and No Original Source Issue Because the Bar Was Never Triggered

Appellees' "claim smuggling" point about Blueprint and Fyzical collapses under the statutory framework. Appellees' Br. 62. The public disclosure bar inquiry

asks whether qualifying public sources revealed the fraudulent transactions alleged against those entities. They did not. Even setting aside the Roselli conversation entirely, Appellees identify no public source disclosing Blueprint's or Fyzical's accessible liquidity, any waiver inapplicability determination, or New Harbor's causal role in their PPP submissions. The bar therefore fails as to all three PPP Recipients on the public materials alone. Roselli provides additional non-public support as to Ocean State; it is not an entity-specific dependency required to defeat the bar as to Blueprint or Fyzical.

Nor can Appellees rebrand Berkley's allegations against Blueprint and Fyzical as claim smuggling. *Springfield Terminal* expressly explains that where the public domain contains, at most, only part of the alleged fraudulent transaction, a relator may proceed by supplying the missing element or by alleging fraud itself. 14 F.3d at 655. That is what Berkley did here. If Appellees contend that entity-specific proof for Blueprint and Fyzical is weaker, that is a merits argument, not a public disclosure bar answer.

Appellees' reliance on *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007) is misplaced. Appellees' Br. 62. *Rockwell* was a pre-2010 original source case addressing whether a relator could use original source status for one claim to obtain "jurisdiction in gross" over different claims otherwise barred by public disclosure bar. Berkley makes no such argument and does not invoke the

original source exception. His point is antecedent: as to Blueprint and Fyzical, the cited public materials never disclosed the essential fraudulent transactions, so the bar was never triggered. There is therefore nothing to smuggle.

The same flaw defeats Appellees' original source argument. Appellees' Br. 60–62. Berkley does not invoke the original source exception, and the exception matters only after the public disclosure bar is triggered. *See Winkelman*, 827 F.3d at 208–09. Because Appellees failed to show that qualifying public disclosures revealed substantially the same allegations or transactions, the Court need not reach original source.

## IV. The Judgment Should Be Reversed Independently as to New Harbor

Berkley's claim against New Harbor required its own analysis because it rested on a distinct and indispensable element: that New Harbor caused the PPP Recipients to submit false claims. Berkley's claim against New Harbor has never been that New Harbor violated the FCA merely because it owned the PPP Recipients. It is that New Harbor, as a non-submitting entity, knowingly caused the PPP Recipients to submit false claims. The FCA expressly reaches those who "cause" false claims to be presented, those who "cause[] to be made or used" a false record or statement material to a false or fraudulent claim, and those who "cause[] to be made or used" a false record material to an obligation to pay the government. 31 U.S.C. § 3729(a)(1)(A), (B), (G). This Court has recognized that non-submitting

actors may be liable on that theory. *See Guilfoile v. Shields*, 913 F.3d 178, 187 (1st Cir. 2019); *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 389–90 (1st Cir. 2011).

The public disclosure bar applies to an "action or claim." 31 U.S.C. § 3730(e)(4)(A). And this Court has made clear that distinct aspects of an alleged fraudulent scheme must be analyzed distinctly, not collapsed into one undifferentiated theory. *See Cunningham*, 713 F.3d at 669–71, 675–76. The district court did not do that here. It analyzed public disclosures concerning the PPP Recipients' loans, ownership, employee counts, and New Harbor's AUM, then granted summary judgment for all Defendants. It never identified any public disclosure of New Harbor's own alleged causal conduct. That was legal error.

### A. The District Court Needed to Analyze Berkley's Discrete Claim Against New Harbor

Appellees' lead response is procedural. They say the district court did not need to "explain twice what it already explained once" because its analysis of the PPP Recipients necessarily resolved Berkley's separate FCA claim against New Harbor. Appellees' Br. 63. That argument misses the point.

Berkley does not contend that the district court committed reversible error by failing to write a second discussion for the sake of repetition. The point is more fundamental: the district court never performed the distinct public disclosure bar analysis that Berkley's discrete New Harbor claim required. Appellees emphasize

that the district court's order mentioned New Harbor 31 times. *Id.* But that is not a legal argument; it is a word count. Frequency of reference is not analysis.

Causation is the necessary predicate of Berkley's claim against New Harbor. 31 U.S.C. § 3729(a)(1)(A), (B), (G). New Harbor was not itself the borrower. Its liability does not arise from ownership, affiliation, or private equity sponsorship in the abstract. Rather, Berkley's claim is that New Harbor, through its oversight, direction, and control in the PPP process, caused the PPP Recipients to submit false claims for PPP loans. Unless qualifying public disclosures revealed facts plausibly disclosing that essential transactional fact, the public disclosure bar could not apply to Berkley's New Harbor claim. *See Winkelman*, 827 F.3d at 208; *Ondis*, 587 F.3d at 53.

The district court never asked that question. Its analysis focused on whether public materials disclosed the transactions from which fraud could supposedly be inferred as to the PPP Recipients themselves: the loans, New Harbor's ownership interests, public employee counts, and New Harbor's AUM. But even assuming those materials were sufficient to trigger the bar as to the PPP Recipients—which Berkley disputes—they still do not answer whether the public domain disclosed New Harbor's role in causing the PPP submissions.

Appellees' contrary position would collapse distinct FCA theories into one. Under their logic, once public information exists about a submitting entity's false

claim, any separate claim against a parent company, sponsor, or private equity owner is barred as well, even if the public never learned of that non-submitting entity's own conduct in causing the false claim. That cannot be right. The FCA separately reaches those who cause false claims to be submitted, and the public disclosure bar must be applied to the claim alleged.

### B. The Public Materials Did Not Disclose the Essential Transactional Facts of Berkley's Claim Against New Harbor

Appellees' New Harbor argument is notably thin. Their principal response is that no separate analysis was required because Berkley's New Harbor claim rests on the same publicly disclosed "transactions" as his claims against the PPP Recipients. Appellees' Br. 62–65. That answer defines the transaction at too high a level of generality and assumes away the dispositive issue. *See Sam Jones Co.*, 152 F.4th at 958–59 ("'[B]oosting the level of generality in order to wipe out *qui tam* suits that rest on genuinely new and material information is not sound.'") (*quoting U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 936 (7th Cir. 2012)). Berkley's New Harbor claim required proof of an additional and indispensable transactional fact: New Harbor's own role in causing the PPP submissions. No public materials disclosed that fact. The statute requires a claim-specific comparison; Appellees cannot avoid that analysis by calling all claims part of the same scheme. 31 U.S.C. § 3730(e)(4)(A); *Cunningham*, 713 F.3d at 670–71, 675–76.

Appellees accuse Berkley of claim smuggling, but their New Harbor argument commits the same alleged error in reverse. They try to smuggle the New Harbor causation analysis into the PPP Recipients' public disclosure bar analysis. The statute does not permit that shortcut. Again, Section 3730(e)(4)(A) applies to an "action or claim," and Berkley's claim against New Harbor was not that New Harbor merely owned portfolio companies that received PPP loans. It was that New Harbor, as a non-submitting entity, oversaw, directed, controlled, and caused the challenged submissions. The court's public disclosure bar analysis had to account for that causation theory. It did not.

Nor can Appellees reframe the issue as pleading or proof. They argue Berkley failed to plead or prove New Harbor causation. Appellees' Br. 65. That again is a Rule 9(b) or Rule 56 merits argument. The district court granted summary judgment only on the public disclosure bar, and Appellees identify no qualifying public disclosure that revealed New Harbor's alleged causal role before Berkley sued.

Public sources may have shown PPP loans, ownership relationships, employee counts, New Harbor's AUM, and Roselli's public roles. But those facts did not disclose New Harbor's causal conduct in the PPP application process. Ownership is not causation. Sponsor status is not submission. And a public title does not disclose private direction and control over a portfolio company's PPP certifications and submissions.

Appellees' "irony" jab only confirms the problem: whether Berkley adequately pleaded and proved causation is distinct from whether public disclosures had already revealed that causation theory. In any event, the irony remark rests on a false premise: Berkley fully detailed and differentiated the New Harbor defendants in the Second Amended Complaint, in discovery, and again in his summary judgment briefing. APP0154–0156, 0628–0638, 1162–1170, 1176–1182, 1187–1195.

The summary judgment record underscores the distinction. Berkley's Opening Brief identified evidence that the PPP Recipients were New Harbor portfolio companies; that New Harbor exercised control through ownership interests, financial control, governance rights, and management arrangements; that Roselli served simultaneously as a New Harbor Operating Partner, Ocean State's Chief Executive Officer, and Blueprint's Executive Chair; and that other New Harbor personnel held executive positions or board seats and coordinated PPP application efforts across multiple New Harbor portfolio companies, including the PPP Recipients. Br. 9–10, 13. Whether that evidence ultimately proves FCA causation liability is a merits question. The threshold point is simpler: Appellees identify no qualifying public disclosure that revealed New Harbor's alleged causal role before Berkley sued.

Appellees' rule would create derivative public disclosure bar immunity for parent companies and private equity sponsors. If public disclosure of a portfolio company's loan and ownership structure automatically barred a separate causer claim against the sponsor, then the sponsor's own conduct would become irrelevant to the bar. The statute does not support that result.

Step one of the public disclosure bar analysis is dispositive. Because the public domain did not disclose the element most essential to Berkley's New Harbor claim—New Harbor's role in causing the PPP Recipients to submit false claims—the public disclosure bar did not justify summary judgment for New Harbor.

### C. The Public Materials Were Not Substantially the Same as Berkley's Claim Against New Harbor

Appellees' substantial similarity argument fails for the same reason. They assert that the publicly disclosed transactions are substantially similar to those alleged in Berkley's complaint. Appellees' Br. 64. But substantial similarity requires comparison of the substance of the prior disclosures with the substance of the relator's claim; it does not permit the Court to ignore a distinct theory of liability merely because it shares background facts with other claims. *See Cunningham*, 713 F.3d at 670–71, 675–76. Here, public disclosures of PPP loans, ownership relationships, AUM, and headcounts are not substantially similar to Berkley's allegation that New Harbor, as a non-submitting entity, caused false claims to be

presented. A borrower's public loan is not the same transaction as a sponsor's undisclosed causal role in procuring that loan through false certifications.

The difference is not semantic. A borrower's public PPP loan is one transaction. A sponsor's alleged oversight, direction, control, and causation of that borrower's false certification is another. The public disclosures revealed, at most, the former. They did not reveal the latter.

## CONCLUSION

For these reasons, the Court should reverse the judgment.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 28(a) and 32(a)(7), I hereby certify that this brief complies with the type-face limitations set forth in Fed. R. App. P. 32(a)(5)(A) and the type-style limitations set forth in Fed. R. App. P. 32(a)(6). This brief contains 6,490 words, excluding those portions exempted by Fed. R. App. P. 32(f), as calculated by the word count feature of Word for Microsoft 365. This motion was prepared in a proportionally spaced font, using Word for Microsoft 365, in 14-point Times New Roman.

/s/ Eric E. Renner
Eric E. Renner

## CERTIFICATE OF SERVICE

I, Eric E. Renner, hereby certify that on this 6th day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the Court's appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

/s/ Eric E. Renner
Eric E. Renner